**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**TIMOTHY HEIDT**,

Plaintiff,

v.

**CITY OF MCMINNVILLE, acting by and through the MCMINNVILLE POLICE DEPARTMENT, a municipal corporation, RON NOBLE, former Chief of Police, City of McMinnville, in his individual capacity**,

Defendants.

Case No. 3:15-cv-0989-SI

**OPINION AND ORDER**

Jeffrey H. Boiler, BOILER LAW FIRM, P.O. Box 101, Vida, OR 97488. Of Attorneys for Plaintiff.

Steven A. Kraemer and Leslie A. Edenhofer, KRAEMER & EDENHOFER, P.O. Box 1469, Lake Oswego, OR 97035. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Timothy Heidt, a sergeant with the McMinnville Police Department, brings this suit under 42 U.S.C. §1983 against his employer, City of McMinnville, acting by and through the McMinnville Police Department ("MPD"), and the former Chief of Police for the City of McMinnville, Ron Noble ("Noble"), in his individual capacity. Heidt alleges violations of his

rights under both the First Amendment (retaliation and free association) and the Fourteenth Amendment (procedural and substantive due process and equal protection). Defendants move to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court GRANTS Defendants' motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**PLAINTIFF'S ALLEGATIONS**

Heidt was hired by the MPD as a reserve officer in 1991, and as a full-time police officer in 1997. As of February 19, 2012, Heidt held the rank of Sergeant. On February 19, 2012, Heidt was involved in an off-duty incident in Seaside, Oregon. Heidt alleges that after an internal investigation by MPD, he was exonerated, but that the investigation was reopened and after the results of the second investigation, Heidt was suspended and demoted on March 20, 2012.[1]

Heidt filed a grievance with his union, the McMinnville Police Association ("MPA"), relating to the disciplinary actions of March 20, 2012. During a meeting of the MPA on April 25, 2012, at which the issue of whether to arbitrate Heidt's discipline was discussed, Heidt's wife spoke on his behalf.[2] Shortly thereafter, Noble spoke with Heidt's wife regarding her statements made in support of Heidt, placed her on administrative leave, and then terminated her. On December 19, 2012, Mrs. Heidt served McMinnville with a Tort Claim Notice, alleging alleged unlawful termination.

On January 8, 2013, an arbitration decision was issued regarding Heidt's discipline and demotion. The arbitrator concluded that Heidt had not committed a crime and that his suspension was not warranted. Also in January 2013, Noble directed subordinates to initiate a second review of a February 2010 use of force complaint against Heidt. Heidt alleges that this incident had

---

[1] Heidt alleges in Paragraph 9 of his Complaint that the investigation was reopened "six months" after the first investigation, but Heidt alleges that the incident occurred on February 19, 2012, and that based on the second investigation, he was disciplined on March 20, 2012. There is only one month between February 19, 2012 and March 20, 2012. The Court disregards Heidt's allegation that the second investigation occurred six months after the first investigation.

[2] Heidt's wife was also a member of the MPA.

previously been reviewed in 2010 and he was found to be in compliance with MPD policy, with Noble concurring with that conclusion in May 2010.

On or about March 18, 2013, Noble notified Heidt of the results of the second review of the February 2010 use of force incident and that the review had concluded that Heidt's use of force was not reasonable and violated MPD policies. Noble noted that no disciplinary or other action would be taken regarding Heidt's use of force, but that the review raised questions about Heidt's credibility and that Noble was initiating an investigation into Heidt's credibility with respect to the 2010 incident.

Noble selected Captain Jason Alexander of the Woodburn Police Department to conduct this investigation. Heidt alleges that Noble and MPD knew that there were mismanagement allegations pending against Captain Alexander and that Captain Alexander was selected for the purpose of reversing Heidt's earlier exonerations and undermining Heidt's credibility with the Yamhill County District Attorney's office so that the office would refuse to prosecute cases involving Heidt's testimony, effectively rendering him unable to work as a police officer. Heidt further alleges that two of MPD's officers were later selected to conduct an "administrative inquiry" into alleged misconduct by the Woodburn Police Department, alleging that the two departments conducted sham investigations for one another to achieve each Department's desired outcome.

On or about March 22, 2013, Noble adopted a policy relating to disclosures of internal investigations to the District Attorney's office relating to *Brady*[3] material. Captain Alexander's investigation was completed on April 11, 2013. Heidt alleges that this report improperly

[3] This is material that is required to be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963), which requires prosecutors to disclose to defense counsel exculpatory or impeaching evidence.

questioned Heidt's credibility and included false statements. Noble forwarded this report to the Yamhill District Attorney's office and inquired whether this report would affect the ability to prosecute cases in which Heidt is involved. Noble noted that Heidt's credibility was so detrimentally affected that Noble could not rely upon Heidt as a witness for the prosecution.

On May 16, 2013, Heidt was removed from patrol and reassigned to administrative duties. On June 6, 2013, Noble issued findings for the internal affairs investigation against Heidt. Noble's report adopted Captain Alexander's report, which allegedly contradicted the earlier exoneration of Plaintiff without any new evidence. Based on this report, Heidt's employment was terminated on June 6, 2013.

Heidt filed a grievance with the MPA challenging his termination. On or about July 23, 2014, Heidt was fully reinstated with back pay and benefits by the arbitrator. The arbitrator issued a 63-page opinion that expressly contradicted the findings and conclusions of Captain Alexander.

Heidt alleges that on or about August 29, 2014, MPD management personnel notified the Yamhill District Attorney's office of Heidt's reinstatement. Heidt further alleges that MPD requested or implied that the District Attorney's assistance was needed to provide grounds to effectively circumvent the arbitrator's ruling reinstating Heidt. Heidt asserts that, sometime thereafter, a "sham hearing" was conducted with deliberations among all personnel of the District Attorney's office, but without Heidt or any representative of his or from the MPA. On or about October 6 and 31, 2014, Heidt was required by the MPD to appear and defend himself in a "name clearing" proceeding that Heidt alleges was conducted "nominally" by the District Attorney's office. The hearing was presided over by the Yamhill District Attorney but Heidt's attorney was not permitted to present evidence or argument. After these proceedings, the District

Attorney informed Heidt that, based largely on reports of Heidt's conduct in Captain Alexander's report, Heidt's testimony would not be used in any prosecution. This, alleges Heidt, was the intent of Defendants in providing information to the District Attorney's office and effectively allowed Defendants to disobey the arbitrator's decision.

## DISCUSSION

### A. Statute of Limitations

McMinnville moves to dismiss Heidt's claims brought under 42 U.S.C. § 1983 to the extent that they are based on events occurring before June 4, 2013, as barred by the applicable statute of limitations. The statute of limitations in a § 1983 suit is the same as provided under state law for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The relevant statute of limitations for personal injury under Oregon law is two years. Or. Rev. Stat. § 12.110(1). Thus, any act that occurred more than two years before the commencement of this action is barred under Oregon's two-year statute of limitations. The Ninth Circuit has explained, however, that although time-barred acts cannot be used to support a claim of a constitutional violation under § 1983, such acts can be used to establish motive or to put any timely-filed claim in context. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002).

Heidt filed his Complaint in this action on June 4, 2015. Two years before that date is June 4, 2013. In his Complaint, Heidt details several events and allegedly improper actions that occurred before June 4, 2013. These actions may not be used as the basis for any claim of relief, but may be used to establish motive or otherwise provide context for any claim based on events occurring within the statute of limitations.

Heidt appears to allege injury from two events that occurred within the statute of limitations. First, Heidt alleges that Defendants terminated Heidt's employment on June 6, 2013, although Heidt was ultimately reinstated with back pay and benefits. Second, Heidt alleges that

Defendants effectively circumvented the arbitration award that was entered in Heidt's favor by contacting the Yamhill County District Attorney on August 29, 2014, and orchestrating events so that the District Attorney would refuse to use Plaintiff's testimony in any future prosecutions. These allegations are timely. Whether theys are sufficient to state a claim is discussed next.

## B. Failure to State a Claim

Defendants also argue that Heidt fails to state a claim alleging a violation of Heidt's constitutional rights. To state a claim for relief under § 1983, Heidt must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the deprivation was committed under color of state law. *Azer v. Connell*, 306 F.3d 930, 935 (9th Cir. 2002). Heidt alleges that Defendants violated several of his First and Fourteenth Amendment rights.[4]

### 1. Section 1983—First Amendment Retaliation

Heidt asserts two claims under § 1983 based on alleged First Amendment retaliation—one based on retaliation against protected speech and the other based on retaliation for Heidt's association with his wife and his union.

#### a. Protected Speech

The First Amendment protections relating to speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of

[4] Heidt asserts his claims against the City of McMinnville under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "A municipality is subject to suit under § 1983 only 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Because the Court finds that Heidt fails to state a claim for a constitutional tort, the Court does not reach McMinnville's arguments that any alleged torts were not caused by a policy statement, ordinance, regulation, or decision officially adopted and promulgated by McMinnville's officers.

that right. *See Pickering v. Bd. of Educ*., 391 U.S. 563, 574 (1986) (noting that retaliatory acts are a "potent means of inhibiting speech"). The First Amendment, however, only shields a public employee when he or she speaks as a citizen on a matter of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 426 (2006) (rejecting the notion that "the First Amendment shields from discipline the expressions employees make pursuant to their professional duties"); *see also Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010). "'Statements are made in the speaker's capacity as a citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform.'" *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (quoting *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir 2008)). Speech involves a matter of public concern when it fairly can be said to relate to "any matter of political, social, or other concern to the community." *Connick v. Myers,* 461 U.S. 138, 146 (1983). Speech that involves "individual personnel disputes and grievances and that . . . would be of no relevance to the public's evaluation of the performance of the governmental agencies" is generally not of public concern. *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir. 1983).

The Ninth Circuit follows a five-step process to determine whether an employer impermissibly retaliated against an employee for protected speech:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng*, 552 F.3d at 1070. The Court decides as a matter of law whether the employee's speech involved a matter of public concern. *Connick*, 461 U.S. at 148 n.7.

Here, Heidt details several of his personnel grievances in his complaint, but does not allege any particular speech he asserts caused Defendants' alleged retaliatory conduct. Heidt also does not identify the alleged protected speech in his briefing in opposition to Defendants' motion. Based on the allegations in the complaint, it appears that Heidt's concerns relate to his employment grievances and not to speech he made as a private citizen regarding issues of public concern. Accordingly, Defendants' motion is granted with respect to Heidt's First Amendment retaliation claim. Heidt has leave to replead this claim if he can allege: (1) speech he made as a private citizen; (2) that involved a matter of public concern; and (3) that caused retaliatory conduct by Defendants that occurred within the statute of limitations.

**b. Free Association**

The Supreme Court has also recognized a right to associate for the purposes of engaging in activities protected by the First Amendment—speaking, worshiping, and petitioning the government—as an "indispensable means of preserving other individual liberties." *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). In a First Amendment retaliation claim, a plaintiff must show that (1) he or she engaged in protected association; (2) the defendant took an adverse employment action against him or her; and (3) his or her association was a substantial or motivating factor for the adverse employment action. *See Hudson v. Craven,* 403 F.3d 691, 695 (9th Cir. 2005); *Oliver v. Spokane Cty. Fire Dist. 9*, 963 F. Supp. 2d 1162, 1172 (E.D. Wash. 2013). Additionally, when the alleged association claim predominates but speech rights are necessarily implicated in the claim, it is considered a "hybrid" association and speech claim and the public-concern requirement applies. *Hudson*, 403 F.3d at 698.

Heidt alleges Defendants retaliated against him due to his association with (1) his wife, who spoke publicly on his behalf, as well as (2) his union, who provided collective bargaining rights in connection with Heidt's discipline, demotion, and termination. Heidt does not identify

what acts he alleges were taken against him in retaliation for his association with his wife and the union, nor does Heidt explain what aspects of his association he alleges triggered the allegedly retaliatory conduct.

It appears that Heidt maybe alleging that his association with his wife triggered retaliatory conduct because she spoke out publicly on Heidt's behalf. This is a hybrid speech and association claim, and the public-concern test applies. *Hudson*, 403 F.3d at 698. Mrs. Heidt's speech related to Heidt's personnel grievances and not to a matter of public concern. Thus, Heidt fails to state an association claim relating to his association with his wife.

Heidt also does not identify how his association with the MPA implicates a First Amendment right. To the extent it is related to his and the union's speech challenging the validity of the disciplinary actions, it is also a hybrid speech and association claim. *See Schnabel v. Hualapai Valley First Dist.*, 2009 WL 322948, at *10 (D. Ariz. Feb. 9, 2009) (finding allegations that the plaintiff was retaliated against for being active in the union to be a hybrid speech and association claim). As with his other First Amendment retaliation claims, the association and speech involved appear to relate only to Heidt's personnel grievances and not to any matter of public concern.

Defendants motion to dismiss Heidt's First Amendment retaliation claim is granted. Heidt has leave to replead this claim if he can cure the deficiencies identified in this Opinion and Order.

**2. Section 1983—Fourteenth Amendment**

Heidt also alleges that McMinnville violated his Fourteenth Amendment right to procedural and substantive due process and equal protection. Each claim is addressed in turn.

**a. Procedural Due Process**

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-01 (9th Cir. 2008). To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Id.* at 1090. "Notice and a meaningful opportunity to be heard are hallmarks of procedural due process." *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012) (quotation marks and alterations omitted) (quoting *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989)).

The Supreme Court has repeatedly recognized, however, that "the Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *NASA v. Nelson*, 562 U.S. 134, 148 (2011) (quoting *Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 598 (2008)). "This distinction is grounded on the 'common-sense realization' that if every 'employment decision became a constitutional matter,' the Government could not function." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)); *see also Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause . . . is not a guarantee against incorrect or ill-advised personnel decisions.").

In analyzing whether adequate procedural due process was provided, the Supreme Court directs courts to balance: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedures; and (3) the government's interest, including the functions involved and the burdens of additional or substitute procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

For the first factor, the parties agree that Heidt has a protected interest in his employment as a police officer. For the second factor, "[a] public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, those procedures satisfy due process." *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992). "Grievance/arbitration procedures are a universally accepted method of resolving employment disputes," thus, "the risk of an erroneous determination in the grievance/arbitration procedure is not large, and the value of additional or substitute procedures is not great." *Id.* When a collective bargaining agreement provides for an adequate grievance and arbitration procedure, even if the procedure is solely available at the discretion of the union and the union elects not to file a grievance on behalf of the employee, that is sufficient process. *Id.* at 951.

Heidt alleges that his position was subject to a collective bargaining agreement and that he and the union pursued the applicable grievance procedure relating to Heidt's termination. Assuming without deciding that Heidt's June 2013 termination is actionable despite his reinstatement, Heidt was ultimately successful in his grievance process and was reinstated by the arbitrator. The Court finds the grievance and arbitration process relating to Heidt's termination to be adequate as a matter of law. Accordingly, Defendants' motion to dismiss Heidt's procedural due process claim based on Heidt's June 2013 termination is granted.

The only other timely conduct alleged by Heidt is that Defendants contacted the Yamhill District Attorney's office in August 2014 to notify the District Attorney of Heidt's reinstatement and to request the District Attorney's assistance in providing grounds to effectively circumvent the arbitration award. Heidt, however, fails to allege facts plausibly showing that this alleged conduct of Defendants deprived Heidt of his property interest in his position as a police officer.

Heidt does not allege that he has been terminated or has been deprived of any pay or benefits as a result of Defendants' communication with the District Attorney's office. Thus, Heidt fails to allege the deprivation of a protected interest arising out of this alleged misconduct. Further, Heidt does not allege whether he has used the protections and procedures in his collective bargaining agreement with respect to this claim. Accordingly, Defendants' motion to dismiss Heidt's procedural due process claim based on Defendants' August 2014 communications with the District Attorney's office is granted.

The Court notes that it is unclear whether Heidt is also alleging that Defendants provided misleading and inaccurate information to the District Attorney's office in March and April, 2013, before the statute of limitations, but that Heidt did not and could not reasonably have known about it until after the statute of limitations. "A statute of limitations under § 1983, however, begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). Heidt, however, fails to allege when he knew or had reason to know about this alleged conduct, how this alleged conduct has resulted in the deprivation of his protected property interest, and what, if any, process was afforded to Heidt before the deprivation of any property interest. Accordingly, to the extent Heidt intended to base a claim on Defendants' provision of information to the District Attorney's office in March and April 2013, such a claim is dismissed without prejudice.

**b. Substantive Due Process**

"To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Moreover, "only the most egregious official conduct" establishes a substantive due process violation. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

"Thus, in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n. 8. "To state a substantive due process claim, the government's action must have been 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.'" *Basso v. City of W. Covina*, 86 F.3d 1161 (9th Cir. 1996) (quoting *Lebbos v. Judges of the Superior Court, Santa Clara Cnty.*, 883 F.2d 810, 818 (9th Cir. 1989)).

Heidt fails to identify what alleged action violated his substantive due process rights. The Court, however, has found only two actions to be timely. Assuming without deciding that Heidt's June 2013 termination constituted an actionable deprivation of a property interest despite his reinstatement, the Court finds that Heidt does not allege facts sufficient to "plausibly suggest" this termination was so egregious that it shocks the conscience. Terminating Heidt after a report concluding that he violated use of force policies and another report concluding that he lacks credibility, although ultimately reversed by the arbitrator, is not "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* (finding termination of officer because his superior believed him to have engaged in "repeated episodes of dishonesty and excessive force" not to violate substantive due process). Thus, that action does not support a substantive due process claim.

Regarding the alleged conduct of contacting the District Attorney's office, as discussed above, Heidt does not allege facts that plausibly suggest this conduct resulted in an action that deprived him of a protected property interest.

**3. Fourteenth Amendment Equal Protection**

Heidt's first claim for relief states in the heading that he is asserting, among other violations, a "Fourteenth Amendment Equal Protection Clause Violation." The facts alleged in

the complaint, however, do not assert a basis for an Equal Protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amdt. 14, § 1. To prevail on an equal protection claim, a plaintiff must show that the defendant acted with intent to discriminate based upon the plaintiffs membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "[S]tate action that does not implicate a fundamental right or a suspect classification passes constitutional muster under the equal protection clause so long as it bears a rational relation to a legitimate state interest." *Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996) (en banc) (*overruled in part on other grounds as stated in Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852-53 (9th Cir. 2007)). Although this standard is deferential to governmental action, "the rational relation test will not sustain conduct by state officials that is malicious, irrational, or plainly arbitrary." *Id.* (quoting *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990)). Heidt fails to allege that he is in a protected class and that Defendants acted with the intent to discriminate against Heidt based on his status in a protected class. Thus, Heidt fails to state an Equal Protection violation claim.

**C. Qualified Immunity**

Heidt named former Chief of Police Noble in his individual capacity as a defendant in the complaint. The doctrine of qualified immunity protects government officials from liability for civil damages related to their official actions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity, the Ninth Circuit employs a two-step test: first, determining whether the official violated the plaintiff's constitutional rights; and second, whether the constitutional right was "clearly established in

light of the specific context of the case" during the relevant time. *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Because the Court has found that Heidt fails properly to allege that Noble violated Heidt's constitutional rights, the Court declines to consider further Noble's argument of qualified immunity.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss. Dkt. 5. All claims are dismissed without prejudice. Heidt may file an amended complaint within 30 days of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of December, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge