IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIMOTHY HEIDT, | Case No. 3:15-cv-00989-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF MCMINNVILLE, acting by and through the MCMINNVILLE POLICE DEPARTMENT, a municipal corporation; RON NOBLE, former Chief of Police, City of McMinnville, in his individual capacity; MATT SCALES, Chief of Police, City of McMinnville, in his official and individual capacities; YAMHILL COUNTY, a municipal corporation; and BRADLEY BERRY, in his official and individual capacities as District Attorney of Yamhill County for injunctive relief,** | |
| Defendants. | |

Jeffrey H. Boiler, Boiler Law Firm, P.O. Box 101 Vida, OR 97488; and Joseph R. Shaeffer, MacDonald Hoague & Bayless, 705 Second Avenue, Suite 1500, Seattle, WA 98104-1754. Of Attorneys for Plaintiff.

Steven A. Kraemer and Leslie A. Edenhofer, Kraemer & Edenhofer, P.O. Box 1469, Lake Oswego, OR 97035. Of Attorneys for Defendants City of McMinnville, Ron Noble, and Matt Scales.

David C. Lewis, MILLER & WAGNER LLP, 2210 N.W. Flanders Street, Portland, OR 97210-3408. Of Attorneys for Defendant Yamhill County.

Ellen F. Rosenblum, Attorney General, and Tracy J. White, Senior Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301-4096. Of Attorneys for Defendant Bradley Berry.

**Michael H. Simon, District Judge.**

Plaintiff Timothy Heidt ("Heidt"), a sergeant with the McMinnville Police Department, brings this suit under 42 U.S.C. § 1983 against his employer, City of McMinnville, acting by and through the McMinnville Police Department ("MPD"), as well as against former MPD police chief Ron Noble ("Noble"), current MPD police chief Matt Scales ("Scales") (collectively, "City Defendants"), Yamhill County, and Yamhill County District Attorney Bradley Berry ("Berry"). Heidt's first Complaint, brought against only the City Defendants, was dismissed without prejudice and with leave to amend. Heidt then filed a First Amended Complaint, also against only the City Defendants. The City Defendants filed a motion to dismiss Heidt's First Amended Complaint. Heidt responded by filing a motion to file a Second Amended Complaint ("SAC"), which the Court granted.

In his SAC, Heidt adds Defendants Yamhill County and Berry and alleges two claims for relief—one claim alleging retaliation for protected speech and petitioning under the First Amendment, and one claim alleging procedural and substantive due process violations under the Fourteenth Amendment. Before the Court are Defendants MPD, Noble, and Scales' motion to dismiss, Defendant Yamhill County's motion to dismiss, and Defendant Berry's motion to dismiss Heidt's SAC, all under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court grants these motions and dismisses Heidt's claims in his SAC.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.*, *Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, howeve*r*, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

For purposes of this motion, the Court accepts the well-pleaded material facts from Heidt's SAC (ECF 42) as true.[1] Heidt was hired by the MPD as a reserve police officer in 1992 and as a full-time police officer in 1997. In February 2010, Heidt was involved in a use of force incident. As a result, an investigation was launched, which exonerated Heidt on March 14, 2010.

In January 2013, Defendant Noble, who was then MPD's Police Chief, organized a review board to reexamine Heidt's February 2010 use of force incident, allegedly in violation of the collective bargaining agreement in place through Heidt's union, the McMinnville Police Association ("MPA"). This review was performed for the MPD in large part by Captain Alexander of the Woodburn Police Department. Captain Alexander prepared a report on the use of force incident that questioned Heidt's credibility.

On March 22, 2013, Defendant Noble adopted a policy under which internal police investigations will be disclosed to the District Attorney's office so they can be reviewed for *Brady* material.[2] Under that policy, on April 19, 2013, Defendant Noble forwarded the report compiled by Captain Alexander reexamining Heidt's February 2010 use of force incident to Defendant Berry, the Yamhill County District Attorney. Defendant Noble asked Defendant Berry whether Heidt "retains sufficient credibility to provide courtroom testimony." Defendant Berry then issued a "*Brady* admonition," containing the report compiled by Captain Alexander,

---

[1] As the Court has previously ruled, any alleged facts occurring before June 4, 2013 are outside of the applicable statute of limitations for Heidt's § 1983 claim. They will be considered only as evidence of motive or otherwise to provide context for Heidt's claims based on events occurring within the statute of limitations. The Court previously discussed the statute of limitations in deciding Defendants' first motion to dismiss. ECF 14 at 6.

[2] *Brady* material is exculpatory or impeaching evidence, which prosecutors are required to disclose to defense counsel under *Brady v. Maryland*, 373 U.S. 83 (1963).

and sent it to many criminal defense counsel with an explanation that the report might be exculpatory as to Heidt's credibility as a witness.

Defendant Noble also sought the opinion of the City Attorney regarding Heidt's ability to testify in light of Heidt's questioned credibility. The City Attorney opined that that based on her initial review, "which is admittedly prior to the due process hearing before you [Noble] have had a chance to hear his [Heidt's] full explanation, it appears to me that [Heidt's] credibility is detrimentally impacted to the extent that I cannot rely upon him as a witness for the prosecution." SAC ¶ 4.16.2.

Predicated on the City Attorney's opinion, Defendant Berry's *Brady* admonition against Heidt, and Captain Alexander's determination that Heidt had engaged in an excessive use of force, Defendants Noble and MPD terminated Heidt's employment on June 6, 2013. Heidt filed a grievance with the MPA, challenging that termination. Heidt's grievance arbitration proceeding was held on March 11 and 12, 2014. The arbitrator took testimony and heard argument from Heidt and others regarding Heidt's alleged use of force on a criminal suspect, concerns about Heidt's credibility, constitutional requirements of disclosure under *Brady v. Maryland*, the *Brady* admonition against Heidt, and whether there was just cause for the termination of Heidt's employment. The arbitrator issued a 63-page opinion that rejected the findings and conclusions reached by Captain Alexander in his report regarding Heidt's alleged excessive use of force. On July 23, 2014, the arbitrator fully reinstated Heidt with back pay and benefits.

Heidt alleges that on August 29, 2014, management personnel of the MPD, including Defendant Scales who was then the Police Chief, notified the Yamhill County District Attorney's Office of Heidt's reinstatement. On October 6 and 31, 2014, the MPD and Defendant Scales instructed Heidt to appear and defend himself in a "name clearing" proceeding that Heidt alleges

was conducted only "nominally" by the Yamhill County District Attorney's Office. Defendant

Berry presided over the hearing with several deputy prosecutors present, but Heidt's attorney

was not permitted to present evidence or argument, and Heidt was not permitted to cross

examine witnesses.

After these proceedings, Defendant Berry issued a "*Brady* letter," informing Heidt that

based on reports of his conduct the Yamhill County District Attorney had "'no choice but to

disqualify you as a witness for the State due to a lack of confidence in you as a witness.'" SAC ¶

4.28. Due to this determination by Defendant Berry (hereinafter referred to as the "*Brady*

Determination"), the MPD and Defendant Scales changed Heidt's work duties and shift

assignments. Heidt alleges that the changes in his position have resulted in second-class officer

status, which has been humiliating and caused damage to his reputation and future employment

opportunities.

## DISCUSSION

### A.  Heidt's First Amendment Retaliation Claim Against the City Defendants

Heidt alleges that as a result of his speech and petitioning activities during his grievance

arbitration proceeding, the City Defendants retaliated against Heidt by significantly altering his

work duties. The City Defendants move to dismiss Heidt's § 1983 First Amendment retaliation

claim as failing to state a claim under the First Amendment's public employee framework. The

City Defendants argue that Heidt has not alleged how his speech or petitioning qualifies as a

matter of public concern or that any protected speech or petitioning was a substantial or

motivating factor in Heidt's alleged adverse employment action.

Heidt responds first that the First Amendment's public employee framework should not

apply to him because by the time of the speech and petitioning at issue he already had been

terminated and was, therefore, not a public employee. Additionally Heidt argues that even if the

First Amendment's public employee framework does apply to him, his speech and petitioning was protected under that doctrine.

### 1.  Whether the First Amendment's Public Employee Framework Applies

Regarding the issue of whether the First Amendment's public employee framework applies to Heidt's speech and petition clause claims, the case of *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011), is instructive. In that case, the plaintiff police chief sued his employer, the municipality, under 42 U.S.C. § 1983 for First Amendment violations when the speech and petitioning at issue occurred during union grievance arbitration proceedings after the plaintiff's employment had been terminated. *Id.* at 383-84. Despite the plaintiff's status as a terminated employee, the Supreme Court treated the plaintiff as a public employee for purposes of his § 1983 First Amendment claim and applied the First Amendment's public employee framework to his claim. *Id.* at 386. The Court also noted that subjecting speech clause and petition clause claims to the same public employee framework is "justified by the extensive common ground in the definition and delineation of [those] rights." *Id.* at 389.

Plaintiff offers no case law or other authority holding that First Amendment retaliation claims based on speech or petitioning after a public employee has been terminated, but while the employee is engaged in the public employment grievance process, should not be subject to the public employee framework. Accordingly, the Court will apply the First Amendment's public employee framework to Heidt's speech and petition clause claims. *See also Milardo v. Town of Westbrook*, 120 F. Supp. 3d 206, 217 (D. Conn. 2015) (applying the public employee test for allegedly protected speech and petition activity occurring years after the plaintiff was terminated, including activity during grievance and arbitration proceedings and speech made after winning the arbitration proceeding, while not yet reinstated as a public employee).

### 2. Heidt's Alleged Protected Speech

The First Amendment is "not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." *Guarnieri*, 564 U.S. at 399. The Ninth Circuit follows a five-step process to determine whether an employer impermissibly retaliated against an employee for protected speech:

> (1) whether the plaintiff spoke on a matter of public concern;
> (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action;
> (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). "Notably, 'because these are sequential steps,' a plaintiff's failure to satisfy a single one 'necessarily concludes [a court's] inquiry.'" *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961-62 (9th Cir. 2011) (quoting *Huppert v. City of Pittsburg*, 574 F.3d 696, 703 (9th Cir. 2009)).

### a. Public concern

Heidt does not specifically identify any particular speech made during his arbitration proceeding that he alleges involved issues of public concern. At oral argument, Heidt argued that at the pleading stage he need not identify the specific speech involved. The Court disagrees. The Court must decide as a matter of law whether the employee's speech involved a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). In performing this task, the Court looks "to what the employees actually said, not what they say they said after the fact." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 711 (9th Cir. 2009). Additionally, determining whether speech was a matter of public concern is properly decided on a motion to

dismiss. *See Turner v. City and Cty. of San Francisco*, 788 F.3d 1206, 1212 (9th Cir. 2015); *Gibson v. Office of Attorney Gen.,California*, 561 F.3d 920, 925 (9th Cir. 2009); *Harris v. Harris*, 2012 WL 5187764, at *6 (E.D. Cal Oct. 17, 2012). Without knowing what *Heidt* allegedly said, the Court cannot determine whether what Heidt said was a matter of public concern. *Cf. Kardell v. Lane Cty.*, 2014 WL 4384607, at *2 (D. Or. Sept. 3, 2014) (noting that "any unlawful retaliation must stem from something [the plaintiff] actually said or did").

Instead of identifying any particular speech that he made, Heidt alleges that at arbitration "several witnesses" testified and that "[w]itness testimony covered a wide range of topics." SAC ¶ 4.21. Heidt alleges that these topics included: (1) Heidt's purportedly improper use of force; (2) the MPD's concerns regarding Heidt's credibility; (3) the MPD's ability to use Heidt when his credibility had been called into question; (4) the MPD's reporting of credibility concerns regarding Heidt to the City Attorney and District Attorney's Office; (5) the District Attorney's conclusion that there would need to be a *Brady* disclosure in every criminal prosecution in which Heidt might be a witness; (6) the City Attorney's opinion that she could not call Heidt as a witness; (7) the requirements of disclosure under *Brady*; and (8) whether the MPD had just cause to terminate Heidt. *Id.* Heidt fails, however, to identify whether it was him or some other witness who testified to any given topic. This is insufficient to state a claim for First Amendment retaliation based on protected speech.

Further, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Connick*, 461 U.S. at 147-48. A court should consider the content of the speech "first and foremost." *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (quoting *Weeks v. Bayer*, 246 F.3d 1231, 1234 (9th Cir. 2001)).

Speech involves a matter of public concern when it fairly can be said to relate to "any matter of political, social, or other concern to the community." *Connick*, at 146. Notably, "[h]owever, '[a]n employee's motivation [is] relevant to the public-concern inquiry.'" *Turner*, 788 F.3d at 1210 (first alteration added, remaining alterations in original) (quoting *Desrochers*, 572 F.3d at 715). The appropriate inquiry, therefore, is: "'[W]hy did the employee speak (as best as we can tell)? Does the speech seek to bring to light actual or potential wrongdoing or breach of public trust, or is it animated instead by dissatisfaction with one's employment situation?'" *Id.* (alteration in original) (quoting *Desrochers*, 572 F.3d at 715). Speech that takes the form of "internal employee grievances which were not disseminated to the public . . . cuts against a finding of public concern." *Desrochers*, 572 F.3d at 715.

Heidt argues that speech on the allegedly improper functioning of a police department in reviewing use of force and conducting its discipline is inherently a matter of public concern because police departments are public agencies. Although the Court agrees that as a general proposition the public is interested in whether a police chief has instigated unfounded investigations or pushed the District Attorney to make an unfounded *Brady* determination, the speech alleged by Heidt "was focused on and driven by his internal grievance" and is thus not considered speech on a matter of public concern for purposes of the alleged claim of public employee First Amendment retaliation. *Turner*, 788 F.3d at 1211.

*Turner* is particularly instructive in evaluating Heidt's alleged protected speech. In *Turner*, a public employee (Turner) spoke out in staff meetings, union meetings, and in face-to-face meetings with city officials regarding the San Francisco's practice of using temporary exempt employees, which Turner alleged violated civil service rules and was "in direct contravention of the City Charter." *Id.* at 1209, 1211. The Ninth Circuit found that Turner's

complaints were "potentially significant in their implications" and "ostensibly could invoke a matter of public concern ." *Id.* at 1211. The court concluded, however, that because the speech "arose primarily out of concerns for [Turner's] own professional advancement, and his dissatisfaction with his status as a temporary employee," Turner's speech was not protected. *Id.*

The Ninth Circuit also evaluated the "form and context" of Turner's speech, considering the "public or private nature of the speech, and [] the speaker's motive." *Id.* The court concluded that the "form and context of [the] speech weighs strongly against finding that First Amendment protection is warranted." *Id.* Critical to this conclusion was the fact that "Turner voiced his grievances internally—at union meetings, to his supervisor, and to Human Resources—and they were specifically related to the conditions of his employment." *Id.* The court noted that Turner did not pursue a complaint with the any outside government agency or official, the press, or "otherwise attempt[] to air his concerns in a public forum." *Id.* Thus, the court concluded that "Turner's complaints clearly arose out of an ongoing personnel dispute." *Id.* Finally, the court noted that "there is no indication that Turner sought broad-based union action or relief on behalf of other similarly situated employees. Such 'individual personnel disputes and grievances' are 'generally not of public concern.'" *Id.* at 1211-12 (quoting *Desrochers*, 572 F.3d at 710).

The speech alleged by Heidt is analogous to the complaints in *Turner*. The speech occurred during Heidt's arbitration proceeding arising from his personal union grievance challenging his termination. It was not a public forum. Rather, the audience for Heidt's speech consisted of individuals related to the union grievance arbitration, not the general public, press, or some other outside governmental agency. Additionally, the general topics that Heidt alleges were discussed involve decisions made by MPD and others relating specifically to Heidt and his employment conditions and status. Although Heidt's complaints that the Police Chief and

District Attorney had unfairly and incompetently investigated and disciplined him may be "potentially significant in their implications," the grievance and arbitration proceeding in this case was motivated by Heidt's dissatisfaction with the MPD's decision to terminate him and was made in an effort to contest that termination. *Id.* at 1211.

Heidt also does not allege that in the arbitration he sought broad-based action or reform relating to how MPD or the Yamhill District Attorney's office handled internal investigations or *Brady* determinations, or that Heidt sought relief on behalf of others. Heidt also does not allege facts showing that his speech sought to "bring to light actual or potential wrongdoing or breach of public trust" versus merely a challenge to his own employment situation. *Id.* at 1210. Instead, Heidt's speech, like Turner's, "arose primarily out of concerns for his own professional advancement" and dissatisfaction with his on-the-job treatment and termination. *Id.* at 1211. Such speech is not considered a matter of public concern. *Id.*; *Handte v. Storey Cty.*, 461 F. App'x 591, 592 (9th Cir. 2011) (concluding that speech made by a deputy sheriff complaining that the internal investigation of his conduct was improper did not constitute speech on a matter of public concern because the complaints "were focused entirely on an internal investigation into [the plaintiff's] own conduct, a matter at the core of what is properly considered an individual grievance and not a matter of public concern" and that the plaintiff's criticism that the department instituted an improper firearms training policy, which "occurred during the internal affairs investigation into [the plaintiff's] discharge of a firearm at the shooting range—was a mere extension of [the plaintiff's] dispute with his superiors over a personnel matter and was not intended to call anyone's attention to a matter of concern to the public"); *cf. Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004) ("[T]he type of personnel matters that we have deemed unprotected under the public concern test are employment grievances in which the

employee is complaining about her *own* job treatment, not personnel matters pertaining to others." (emphasis in original)); *Hyland v. Wonder*, 972 F.2d 1129, 1138 (9th Cir. 1992) (finding that speech was a matter of public concern in part because the speech "did not concern [the plaintiff's] dissatisfaction with his own position or on-the-job treatment").

Heidt has not alleged facts showing that his speech relates to a matter of public concern. Because Heidt, however, has not identified the speech he made during the arbitration, the Court cannot conclude that an amendment would be futile. If Heidt's speech at his arbitration involved more than complaints regarding his own personal treatment and discipline, such as if he challenged more broadly incompetency or inefficiency in how department investigations or *Brady* determinations are conducted outside of his own personnel grievance, his speech might possibly be considered a matter of public concern. Thus, the Court will allow Heidt the opportunity further to amend his complaint. The Court notes, however, that because this will be Heidt's fourth opportunity to identify his allegedly protected speech and allege facts sufficient to state a claim for First Amendment retaliation, the Court does not anticipate allowing any further amendments if Heidt's next pleading remains insufficient.

### b.  Private citizen or public employee[3]

There is no bright line rule delineating when a person speaks as a private citizen versus as an employee. "Th[e] inquiry is a 'practical one' that seeks to determine whether the employee spoke pursuant to his or her official responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 421

---

[3] At oral argument, Heidt asserted that because the City Defendants did not specifically argue this element of the public employee test, the Court should not analyze it. The Court disagrees. The City Defendants move that Heidt has failed to state a claim for First Amendment retaliation. The Court thus looks at all the elements required to state a First Amendment retaliation claim and analyzes whether Heidt sufficiently has alleged such a claim.

(2006). If speech "owes its existence to a public employee's professional responsibilities," then restricting it does not infringe on the employee's First Amendment rights. *Id.*

In *Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013), the Ninth Circuit described three factors relevant to a determination of the scope of a plaintiff's job duties. *Id.* at 1074-76. First, "particularly in a highly hierarchical employment setting such as law enforcement," an appropriate factor is "whether or not the employee confined his communications to his chain of command." *Id.* at 1074. "When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties." *Id.* For example, in *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006), the Ninth Circuit held that a correctional officer's communications with a state senator and the inspector general about inmate sexual misconduct were not made pursuant to her official duties and thus constituted speech protected by the First Amendment. *Id.* at 545-46.

Second, the subject matter of the communication may be considered. *Dahlia*, 735 F.3d at 1074-75. Speech made pursuant to normal departmental procedure about a particular incident is typically done within one's job duties. *Id.*at 1075. "By contrast, if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee." *Dahlia*, 735 F.3d at 1075. Third, "when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties." *Id.* at 1075.

Heidt argues that challenging his termination and the underlying conclusions by the MPD and District Attorney cannot, by definition, be within his "job duties." The Court does not take such a narrow view on whether speech is made as an employee versus private citizen. Heidt's

ability to file a grievance is part of his union employment contract. Thus, it is part of the contours of his job that he can file grievances and challenge adverse employment actions taken against him. The fact that his employer does not *require* him to do so on a regular basis is not dispositive of whether speech made during an employment grievance is made as a private citizen. The dispositive question is whether the speech "owes its existence" to official responsibilities. *Garcetti*, 547 U.S. at 421. In the case of an employment grievance challenging one's own treatment, it does, because absent the status as a public employee, there would be no employment grievance. *See Milardo*, 120 F. Supp. 3d at 217 (concluding that speech made during an employment grievance owed its existence to the plaintiff's official responsibilities because it was "made through employment-related channels, [was] not conveyed to the public, and [has] no relevant analogue to citizen speech").

Heidt's allegedly protected speech was made during an employment arbitration proceeding disputing his personal termination and with the purpose of having his job reinstated. Heidt does not allege that he made this protected speech outside of the MPD's union grievance process, which the Court finds to be analogous to speech within the chain of command. Heidt does not allege that he made any protected speech to the public or to other public officials outside of those within his chain of command who were involved in Heidt's grievance. Heidt also does not allege that he made any speech expressing broad concerns regarding the MPD or the City or for purposes of obtaining general improvements to the MPD or City. To the contrary, Heidt alleges that at his arbitration the topics discussed included the City Defendants' conclusions regarding *Heidt's* use of force and *Heidt's* credibility and ability to perform *his* job duties. The concerns Heidt may have raised relating to the MPD's investigation into Heidt's alleged use of force and the use of the *Brady* list were raised in the context of disputing specific

findings against him and trying to get his job back. Thus, Heidt's speech made during his employment grievance "owes its existence" to his status as a public employee.[4]

Heidt argues that because his speech was made in an arbitration proceeding, it is similar to testimony given at trial and is thus protected speech, citing to cases in which testimony at trial has been found to be protected speech. Heidt does not allege, however, that his arbitration was a public proceeding, like a trial. Based on Heidt's allegations, the only reasonable inference is that his arbitration was a private proceeding.  Speech during Heidt's arbitration thus is not analogous to testimony given in a public trial. Further, the cases relied on by Heidt involve a public employee's testimony given on behalf of others. *See Karl v. City of Mountlake Terrace*, 678 F.3d 1062 (9th Cir. 2012) (finding that deposition testimony provided in another person's lawsuit alleging significant government misconduct was protected speech); *Clairmont v. Sound Mental Health*, 632 F.3d 1091 (9th Cir. 2011) (finding that a counselor's testimony at her client's revocation hearing that the client was terminated from a domestic violence program because of his Spanish-speaking status was protected speech). Heidt does not offer any authority for the proposition that testimony given in a private arbitration challenging one's own on-the-job treatment constitutes speech as a private citizen and not a public employee.

### 3.  Heidt's Alleged Protected Petition

The Supreme Court has held that the same framework used to govern First Amendment speech retaliation claims by a public employee is to be used in considering First Amendment retaliation claims based on petitioning. *Guarnieri*, 564 U.S. at 398. The Supreme Court explained how a court should properly consider such claims:

---

[4] This is not a situation where the speaker gained knowledge of the facts about which he or she spoke because of official job duties and then spoke outside of a personal employment grievance, bringing to light that information. *See Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1071-72 (9th Cir. 2012) (finding that such speech was made as a private citizen).

> As under the Speech Clause, whether an employee's petition relates to a matter of public concern will depend on "the content, form, and context of [the petition], as revealed by the whole record." *Connick*, 461 U.S., at 147-148, and n.7. The forum in which a petition is lodged will be relevant to the determination of whether the petition relates to a matter of public concern. A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context.
>
> Of course in one sense the public may always be interested in how government officers are performing their duties. But as the *Connick* and *Pickering* test has evolved, that will not always suffice to show a matter of public concern. A petition that "involves nothing more than a complaint about a change in the employee's own duties" does not relate to a matter of public concern and accordingly "may give rise to discipline without imposing any special burden of justification on the government employer." *United States v. Treasury Employees*, 513 U.S. 454, 466 (1995). The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts.

*Id.* at 398-99 (citation omitted).

The Supreme Court cautioned that "[u]nrestrained application of the Petition Clause in the context of government employment would subject a wide range of government operations to invasive judicial superintendence" because public employees "may file grievances on a variety of employment matters, including working conditions, pay, discipline, promotions, leave, vacations, and terminations" and then every government response to a grievance could "present a potential federal constitutional issue." *Id.* at 390-91. The Supreme Court expressed concern that judges and juries, when having to "determine whether the government's actions were in fact retaliatory, would be required to give scrutiny to both the government's response to the grievance and the government's justification for its actions" and that "[t]his would occasion review of a host of collateral matters typically left to the discretion of public officials." *Id.*

at 391. Such an application of the Petition Clause "would raise serious federalism and separation-of-powers concerns. It would also consume the time and attention of public officials, burden the exercise of legitimate authority, and blur the lines of accountability between officials and the public." *Id.*

As discussed above, Heidt's petition involved no more than a complaint about determinations relating to his job performance and his own public employment termination. It was also brought using the MPD's internal grievance procedure and did not "seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Id.* at 398. Thus, it is not protected under the First Amendment. As with Heidt's speech claim, if he can cure the deficiencies identified, he has leave to replead this claim.

## B.  Heidt's Fourteenth Amendment Due Process Claims Against All Defendants

Heidt asserts both procedural and substantive due process claims against all Defendants arising out of the *Brady* Determination and resultant change in Heidt's job duties and opportunities to work overtime hours. "The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-01 (9th Cir. 2008). The Supreme Court has repeatedly recognized that "the Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *NASA v. Nelson*, 562 U.S. 134, 148 (2011) (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 598 (2008)). "This distinction is grounded on the 'common-sense realization' that if every 'employment decision became a constitutional matter,' the Government could not function." *Id.* at 148-49 (quoting *Connick*, 461 U.S. at 143); *see also Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause . . . is not a guarantee against incorrect or ill-advised personnel decisions.").

PAGE 18 – OPINION AND ORDER

To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Shanks*, 540 F.3d at 1090. "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Thus, "[a] threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). Because both procedural and substantive due process claims require the deprivation of a constitutionally protected property or liberty interest, the Court assesses first whether Heidt adequately has alleged such an interest.

### 1. Property Interest

Heidt alleges that Defendants have deprived him of a constitutionally protected property interest without due process of law. In the Court's previous opinion dismissing Heidt's original complaint, the Court noted that although Heidt has a property interest in his employment as a police officer, the union grievance and arbitration process relating to Heidt's termination was adequate process as a matter of law. Thus, in Heidt's SAC, he alleges that his *Brady* Determination resulted in the City Defendants restricting his duties and precluding him from working overtime and argues that he has a constitutionally protected property interest in his employment duties and hours.

An employee holds a protected property interest only if she or he has a reasonable expectation of entitlement to it. *Stiesberg v. State of California*, 80 F.3d 353, 356 (9th Cir. 1996); *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Public employees have a "property interest" in the terms and conditions of their employment if that interest is established "by existing rules

or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents*, 408 U.S. at 577; *see also Ulrich*, 308 F.3d at 975. A reasonable expectation of entitlement is derived from the wording of the independent source of law, and the "extent to which the entitlement is couched in mandatory terms." *Stiesberg*, 80 F.3d at 356 (quoting *Wedges/Ledges*, 24 F.3d at 62). When the independent source of law details procedural requirements, even those requirements do not automatically transform an employees' "unilateral expectations into a protected property interest." *Wedges/Ledges*, 24 F.3d at 62. Such an interest is only created if the "procedural requirements are intended to be a significant substantive restriction on . . . decision making." *T.T. v. Bellevue Sch. Dist.*, 376 F. App'x. 769, 771 (9th Cir. 2010) (quoting *Stiesberg*, 80 F.3d at 356).

Heidt alleges that he is entitled to *continued employment* with the MPD arising out of the MPD's agreements with Heidt's union, the MPA. Heidt, however, remains employed. What Heidt does not allege is that he is entitled to unchanged job duties, training, or access to overtime hours by virtue of his union contract or some other independent source of law. Generally, the right to a particular position or to receive overtime hours is not a constitutionally protected property interest. *See, e.g.*, *Stiesberg*, 80 F.3d at 357 (holding that a failure to follow administrative procedure prior to transfer to a lateral position did not implicate a protected property interest); *Jackson v. Cty. of Los Angeles*, 46 F.3d 1142 (9th Cir. 1995) (dismissing due process claim as frivolous where the plaintiff "has not shown that the Constitution or any federal law gives him a right to work overtime or a right to carry a firearm at work"); *Barnes v. City of Phoenix*, 2009 WL 3425785, at *3 (D. Ariz. Oct. 22, 2009) (finding that absent allegations of an Arizona law creating a property interest in overtime and use of a state vehicle, "[s]uch losses do

not amount to a deprivation of one's property interest under the Fourteenth Amendment"); *Eberz v. Oregon Dep't of State Police*, 2008 WL 697419, at *5 (D. Or. Mar. 14, 2008) (denying due process claim because of the "absence of any authority indicating that plaintiff has a property interest in accumulated overtime").

Heidt alleges no independent authority that gives him a *right* to work overtime hours, receive training, or perform certain job duties. For example, Heidt does not allege that such rights are contained in his union contract. Nor does he allege any understanding between the MPD and the MPA regarding the procedures employed for changing an officer's job duties or denial of overtime. Notably, Heidt also does not allege any facts showing that any contractual agreement or other understanding is intended to be a "significant substantive restriction" on the MPD's decision making. Accordingly, Heidt has not sufficiently alleged that he has a protected property interest in his job duties as they were before the *Brady* Determination, training opportunities, or in any claimed right to receive overtime hours. Heidt thus fails to allege a constitutionally protected property interest.

Heidt posited at oral argument that his union contract entitles him to overtime pay, training, and opportunities for advancement. Based on this representation, the Court cannot find that amendment would be futile. Heidt has leave to replead, if he can allege facts that show his union contract or some other independent source of law provides Heidt with a right to specific job duties, overtime, or opportunities for advancement, and that the union contract or other source of law is intended to be a significant substantive restriction on the MPD's decision making. Because the Court has previously provided Heidt with an opportunity properly to allege a property interest and he has failed to do so, the Court anticipates this will be the final opportunity to amend that the Court will allow on this claim.

### 2.  Liberty Interest

Heidt also argues that his placement on the *Brady* list and the resultant change in his job duties deprive him of a constitutionally protected liberty interest. The Fourteenth Amendment's protection against deprivation of liberty encompasses the right of persons to engage in any of the common occupations of life. *Hyland*, 972 F.2d at 1141. If, when terminating an employee, the government engages in conduct "that so severely stigmatize[s] the employee that she cannot avail herself of other employment opportunities, a claim for deprivation of liberty will stand." *Id.* (citation omitted). The stigma required must be "severe and genuinely debilitating" such that it essentially forecloses the employee's freedom to take advantage of other employment opportunities. *Id*. The charges must amount to accusations of moral turpitude, such as immorality or dishonesty, to invoke constitutional protection. *Id*. at 1142. Accusations that an employee is incompetent, unable to get along with others, lacks judgment, or is generally untrustworthy fail to rise to a level that implicates a liberty interest. *See Harrington v. City of Portland*, 677 F. Supp. 1491, 1501 (D. Or. 1987). Additionally, the plaintiff must show that there has been public disclosure of the stigmatizing statement, the accuracy of which is contested, as well as the denial of some tangible interest such as employment, or the alteration of a status recognized by state law. *Ulrich*, 308 F.3d at 982 ("The rule . . . has come to be known as the 'stigma plus' test . . . .").

The Court recognizes that placement on a "*Brady* list" involves a negative credibility finding and can have severe employment consequences. As explained in a recent article in the Stanford Law Review:

> [T]he *Brady*-cop designation immediately puts a question mark on
> the officer's ability to testify, and that question mark has severe
> employment consequences. An officer who cannot be counted on
> to testify also cannot be counted on to make arrests, investigate
> cases, or carry out any other police functions that might lead to the

witness stand. *Brady* cops may thus find themselves fast-tracked for termination and hard-pressed to find future work.

Considering the grave employment consequences, one might expect strong substantive and procedural protections to guard against mistakenly or unfairly placing an officer on the *Brady* list. But that is not the case. . . . [P]rosecutors can make *Brady*-cop designations based on flimsy evidence and without giving officers an opportunity to contest the allegations beforehand or to appeal the decisions afterward. Even if . . . the officer overturns the misconduct finding that landed him on the *Brady* list, the prosecutor can continue to label the officer as a *Brady* cop if he doubts the officer's credibility. . . .

The sense of unfairness engendered by this process is only exacerbated by the potential for police management to misuse *Brady* in clashes with police labor. Not without justification, officers suspect prosecutors of using the *Brady* designation to aid police chiefs in punishing disfavored officers.

Jonathan Abel, *Brady's Blind Spot: Impeachment Evidence in Police Personnel Files and the Battle Splitting the Prosecution Team*, 67 Stan. L. Rev. 743, 780-82 (Apr. 2015) (footnotes omitted).

Heidt's allegations, however, fail to articulate the deprivation of a constitutionally protected liberty interest in employment. Heidt does not allege that he was terminated—his current claim involves only a change in job duties and an inability to receive overtime hours or training. His current claim relates to the time period after he was reinstated. Heidt also does not allege that he has been "constructively discharged," meaning that he quit because his working conditions were such that a reasonable person would feel he or she had no choice but to quit or retire. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 940-41 (9th Cir. 2009). To the contrary, Heidt remains employed by the MPD. Heidt also has not alleged that he has attempted to transfer to another police agency and has been unable to do so because of his *Brady* Determination.

Termination is a cornerstone of a constitutional claim for deprivation of the Fourteenth Amendment liberty interest in employment. *See, e.g.*, *Hyland*, 972 F.2d at 1141 (the stigmatizing

conduct must be "in the course of dismissing an employee"); *Brady v. Gebbie*, 859 F.2d 1543,

1552 (9th Cir. 1988) ("In order to trigger the procedural protections of due process attendant to a

properly presented liberty interest claim, a plaintiff must show that . . . the charge is made in

connection with termination of employment.") (quotations and citation omitted); *cf. Boyd v.*

*Edwards*, 2015 WL 3407890, at *2-3 (D. Or. May 27, 2015) (dismissing substantive due process

claim because the plaintiff was still employed and thus had no deprivation of a liberty or

property interest (citing and quoting *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997-98 (9th

Cir. 2007))). Thus, although placement on a *Brady* list and its resulting consequences may in

some circumstances be sufficiently egregious or stigmatizing to trigger a protected liberty

interest, Heidt's allegations do not demonstrate such circumstances in this case. Thus, Heidt has

failed to allege that a protected liberty interest is implicated in this case. Because Heidt remains

employed, the Court dismisses with prejudice Heidt's claim that his liberty interest has been

unconstitutionally deprived.

### C.  Municipal Liability of Defendant MPD

"[A] municipality is subject to suit under § 1983 only 'if it is alleged to have caused a

constitutional tort through a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086,

1096 (9th Cir. 2013) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Thus,

for Heidt to sustain a claim of municipality liability, he must allege an underlying constitutional

tort committed against him. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)

(concluding "that Congress did not intend municipalities to be held liable unless action pursuant

to official municipal policy of some nature *caused a constitutional tort*") (emphasis added);

*Glenn v. Washington Cty.*, 673 F.3d 864, 880 (9th Cir. 2011) ("'Pursuant to 42 U.S.C. § 1983, a

local government may be liable for *constitutional torts committed by its officials* according to

municipal policy, practice, or custom.'" (emphasis added) (quoting *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1028 (9th Cir. 2000))).

As explained above, Heidt has not sufficiently alleged that Defendants' actions have implicated and deprived Heidt of a constitutionally protected right. Thus, there is no underlying constitutional violation and no municipal liability of the MPD under *Monell*.

## D. Liability of Yamhill County

Defendant Yamhill County moves to dismiss Heidt's Fourteenth Amendment claims against it on the grounds that Heidt has failed to allege any facts pertaining to Yamhill County, as opposed to the Yamhill County District Attorney. Additionally, Yamhill County argues that Heidt has failed to establish liability on the part of the County under *Monell*. As the Court has noted, Heidt has failed to establish that there has been any deprivation of a constitutional right. Because the violation of a constitutional right is a necessary condition to establish *Monell* liability, Heidt's claim against Yamhill County fails.

Even if Heidt were able to establish a violation of a constitutional right, in order to hold Yamhill County liable for Defendant Berry's conduct as the Yamhill County District Attorney, Heidt must establish that Defendant Berry "(1) had final policymaking authority concerning the action . . . at issue and (2) was the policymaker for the local governing body for the purposes of the particular act." *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013) (quoting *Weiner*, 210 F.3d at 1028). Yamhill County "can be held liable only if the District Attorney acted as a county officer. If the District Attorney was a state officer when he engaged in the acts of which [the plaintiff] complains, . . . the County cannot be held liable for those acts." *Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir. 2004), *rev'd on other grounds*, 547 U.S. 410 (2006).

In order to determine whether Defendant Berry was acting on behalf of Yamhill County or the State of Oregon, the Court must look to Oregon law. *See McMillian v. Monroe Cty.*, 520

U.S. 781, 785-86 (1997); *see also Goldstein*, 715 F.3d at 754 (noting that the inquiry is

dependent on state law). Unlike the issue of prosecutorial immunity, which is a federal question

that will have a consistent answer nationwide, the "state-local determination under

Section 1983 . . . depends on a careful and thorough analysis of state constitutional and statutory

provisions, and will vary 'from region to region, and from State to State.'" *Goldstein*, 715 F.3d

at 760 (quoting *McMillian*, 520 U.S. at 795); *see also Jackson v. Barnes*, 749 F.3d 755, 765 (9th

Cir. 2014) (explaining that although state case law "is helpful to the extent that it aids in our

understanding of various state constitutional and statutory provisions," it "does not control our

decision; rather, the ultimate decision we must make is one of federal law.").

Under Oregon law, a district attorney is a "member of the executive branch of state

government despite the fact that he or she is technically employed by a county." 49 Or. Op. Att'y

Gen. 14 (1998). He or she performs "functions within the executive branch of *state* government."

*Id.* (emphasis in original). District attorneys and deputy district attorneys are sworn to "conduct

prosecutions on behalf of the state, and are constitutionally designated as the law officers of the

State who shall perform their law enforcement duties as the Legislative Assembly may direct."

*Id.* (quotation marks and citations omitted).

The Ninth Circuit and other federal district courts have most often characterized district

attorneys in Oregon as state actors, not county actors. In *Foster v. Flaherty*, the Ninth Circuit

affirmed dismissal of a suit brought by terminated deputy district attorneys against the

County. 621 F. App'x 463, 463 (9th Cir. 2015). The court held, "[u]nder Oregon law, DAs are

officers of the State of Oregon . . . we conclude that DDAs are State, not County employees" and

that the county, therefore, could not be held liable for the deputy district attorneys' terminations.

*Id.* at 464 (citing *State v. Coleman*, 131 Or.App. 386, 390 (1994)).

In *Davidson v. Deschutes Cty.*, the county defendant moved to dismiss a suit accusing the District Attorney's office of employing discriminatory prosecutorial policies and customs. 2015 WL 4464145, at *8 (D. Or. Jul. 21, 2015). Despite the plaintiff's argument that the policies were only implemented within the county, the court held that *Monell* liability "cannot be attributed to [the] County for the actions of the District Attorney, a non-county policymaker." *Id.* at *8; *see also Cannon v. Polk Cty. Dist. Attorney*, 501 F. App'x 611, 613 (9th Cir. 2012) (finding that the Polk County, Oregon, district attorney's office was entitled to sovereign immunity because "DAs . . . act as state officials . . . when acting in their prosecutorial capacity" (quoting *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008))); *Thomas v. Oregon*, 2012 WL 1029139, at *2 (D. Or. Jan. 30, 2012), *report and recommendation adopted*, 2012 WL 1029426 (D. Or. Mar. 26, 2012) ("Under Oregon law, district attorneys are legal officers of the state." (citing to Oregon Constitution, Art. VII, § 17; Or. Rev. Stat. § 8.660; and state cases)); *Kleinman v. Multnomah Cty.*, 2004 WL 2359959, at *5 (D. Or. Oct. 15, 2004) (concluding "that the Multnomah County District Attorney's office is a state entity").

In narrow circumstances involving administrative functions relating to county staff, however, district courts applying Oregon law have determined that a district attorney acts on behalf of the county. For example, in *Sweet v. Oregon*, the court discussed the dual state-county functions of the Deschutes County District Attorney and concluded that "when acting on behalf of a county, the DA's role is primarily administrative. . . . The DA . . . determines how the budget allocated by the county will be spent on office space, supplies, and additional personnel." 2013 WL 5936386 at *4 (D. Or. Oct. 30, 2013).

Defendant Berry's alleged acts underlying Heidt's claims included releasing a "*Brady* admonition" to defense counsel before Heidt was terminated, holding an allegedly unfair name

clearing hearing after Heidt was reinstated, and making the allegedly improper *Brady* Determination regarding Heidt, despite the arbitrator's decision. Those acts were done on behalf of the State of Oregon, not Yamhill County, because they are acts relating to the District Attorney's prosecutorial function and not county administrative functions.

In analyzing the application of absolute prosecutorial immunity,[5] which similarly requires that the prosecutor's challenged actions be "judicial" as opposed to "administrative," the Ninth Circuit has held that creation of a nonprosecution policy, a decision not to prosecute a particular police officer's cases, and conveying a nonprosecution decision are all judicial functions. *Botello v. Gammick*, 413 F.3d 971, 977 (9th Cir. 2005); *Roe v. City and Cty of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997). In *Botello*, the plaintiff alleged that two prosecutors tried to thwart his hiring and when that did not work the prosecutors "attempted to have him fired by announcing their refusal to prosecute any cases where [the plaintiff] participated in any phase of the investigative process." 413 F.3d at 977. The Ninth Circuit noted that the fact that the prosecutors did not offer any explanation for their nonprosecution policy or their refusal to prosecute any of the plaintiff's cases, even where there might be corroborating evidence "give[s] us pause," but found nonetheless that "their decision not to prosecute [the plaintiff's] cases and their communication of that decision is intimately tied to the judicial process." *Id.*; *see also Roe*, 109 F.3d at 584 (holding that the prosecutors' determination that the plaintiff police officer was not a credible witness and that they would not prosecute his cases without corroborating evidence "falls entirely within a prosecutor's judicial function regardless of whether one case or

---

[5] Because the determination of whether a district attorney was acting on behalf of a state or a county turns on whether the district attorney was performing prosecutorial or non-prosecutorial acts, in making such a determination a court "may look for guidance" to cases analyzing whether a district attorney was performing prosecutorial or administrative functions for purposes of absolute and qualified immunity. *Ceballos*, 361 F.3d at 1183.

a line of cases is at issue" and regardless of "[w]hether their assessment is accurate or not"); *Neri v. Cty. of Stanislaus Dist. Attorney's Office*, 2010 WL 3582575, at *6 (E.D. Cal. Sept. 9, 2010) (finding the district attorney's placement of the plaintiff police officer on a *Brady* list and disclosure of materials relating to the plaintiff to criminal defendants were prosecutorial, not administrative, acts because they stem from "the district attorney's obligations as a prosecutor and require a prosecutor's individual evaluation of evidence under *Brady*"); *Nazir v. Cty. of Los Angeles*, 2011 WL 819081, at *8 (C.D. Cal. Mar. 2, 2011) (finding that "the DA's Office . . . was a state actor when creating a procedure to place police officers on '*Brady* Lists'").

Defendant Berry's allegedly improper acts are not materially different from those alleged in *Botello*. The Court follows the Ninth Circuit and other district courts in this circuit and finds that Defendant Berry's actions were not administrative and were thus performed on behalf of the State of Oregon. Accordingly, the claims against Yamhill County are dismissed with prejudice.

### E.  Immunity of Defendant Berry

Defendant Berry argues that he is immune from Heidt's claims. Defendant Berry argues that the allegations against him in his personal capacity are subject to absolute prosecutorial immunity and qualified immunity. Defendant Berry also argues that the Court should extend the doctrine of judicial immunity to encompass Defendant Berry because he was acting in a "quasi-judicial" capacity. These arguments are rejected.

#### 1.  Prosecutorial and Qualified Immunity

Heidt seeks only injunctive relief from Defendant Berry. Absolute prosecutorial immunity "only protects the defendants from section 1983 damage claims; it does not protect them from suits for injunctive relief." *Gobel v. Maricopa Cty.*, 867 F.2d 1201, 1203 n.6 (9th Cir. 1989) (*abrogated on other grounds by City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *see also Supreme Court of Virginia. v. Consumers Union of the United States*, 446 U.S. 719, 736-37

(1980) (noting in dictum that prosecutorial immunity does not shield prosecutors from suits for injunctive or declaratory relief); *Gonzalez v. Governor of Washington*, 2012 WL 2904235, at *3 (W.D. Wash. June 8, 2012), *report and recommendation adopted*, 2012 WL 2903328 (W.D. Wash. July 16, 2012), *aff'd,* 520 F. App'x 552 (9th Cir. 2013) (rejecting argument by state court judges and prosecutor that absolute immunity applied because judicial and prosecutorial immunity does "not prevent a claim for injunctive relief"). Similarly, qualified immunity also does not protect a defendant from suits seeking injunctive relief. *Vance v. Barrett*, 345 F.3d 1083, 1091 n.10 (9th Cir. 2003) (noting that "a defense of qualified immunity is not available for prospective injunctive relief"); *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief."). Thus, Defendant Berry is not entitled to prosecutorial or qualified immunity with respect to Heidt's claims seeking only injunctive relief.

## 2.  Judicial Immunity

The Court declines to extend the doctrine of judicial immunity to a district attorney's decision to place a police officer on a *Brady* list. Prosecutorial immunity is the appropriate doctrine to apply when prosecutors argue that their conduct was "quasi-judicial." *E.g.*, *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) ("[I]n deciding whether to accord a prosecutor immunity from a civil suit for damages, a court must first determine whether a prosecutor has performed a quasi-judicial function. If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights." (citation and internal quotation marks omitted)); *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986) ("Prosecutorial immunity has developed along much

the same lines as judicial immunity. Immunity extends to protect a prosecutor who acts within his or her authority and in a quasi-judicial capacity.").

## F.  Additional Arguments

Because the Court has found that Heidt has not sufficiently alleged a constitutional violation, the Court does not reach Defendants' remaining arguments, including: (1) qualified immunity for Defendants Noble and Scales; (2) whether the City Defendants can be held liable for the *Brady* Determination; and (3) whether Defendant Berry can be held liable for the changes to Heidt's job duties and opportunity to work overtime.

## CONCLUSION

The City Defendants' Motion to Dismiss (ECF 53), Yamhill County's Motion to Dismiss (ECF 63), and Defendant Berry's Motion to Dismiss (ECF 68) are all GRANTED. Heidt's Second Amended Complaint is DISMISSED. Heidt's claims against Yamhill County and due process claims based on an alleged deprivation of a liberty interest in employment are DISMISSED WITH PREJUDICE. Heidt's remaining claims are DISMISSED WITHOUT PREJUDICE and with leave to replead within 14 days from the date of this Opinion and Order, if Heidt can cure the deficiencies identified in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of November, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge