IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TIMOTHY HEIDT**, | Case No. 3:15-cv-00989-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF MCMINNVILLE, et al.**, | |
| Defendants. | |

Jeffrey H. Boiler, BOILER LAW FIRM, P.O. Box 101 Vida, OR 97488; and Joseph R. Shaeffer, MACDONALD HOAGUE & BAYLESS, 705 Second Avenue, Suite 1500, Seattle, WA 98104-1754. Of Attorneys for Plaintiff.

Steven A. Kraemer and Leslie A. Edenhofer, KRAEMER & EDENHOFER, P.O. Box 1469, Lake Oswego, OR 97035. Of Attorneys for Defendants City of McMinnville, Ron Noble, and Matt Scales.

Ellen F. Rosenblum, Attorney General, and Tracy J. White, Senior Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301-4096. Of Attorneys for Defendant Bradley Berry.

**Michael H. Simon, District Judge.**

Before the Court are Defendants' motions to dismiss the Third Amended Complaint ("TAC") by Plaintiff Timothy Heidt ("Heidt"), which is his fourth attempt sufficiently to allege a claim. Heidt, a sergeant with the McMinnville Police Department, brings one claim under 42

U.S.C. § 1983, alleging procedural due process violations under the Fourteenth Amendment against his employer, City of McMinnville, acting by and through the McMinnville Police Department ("MPD"), as well as against former MPD police chief Ron Noble ("Noble"), current MPD police chief Matt Scales ("Scales") (collectively, "City Defendants"), and Yamhill County District Attorney Bradley Berry ("Berry") (collectively, "Defendants").

The Court previously dismissed Heidt's procedural due process violation claim without prejudice, granting Heidt leave to replead if he can sufficiently plead a constitutionally-protected property interest. Because the Court finds that Heidt has failed to do so, the Court grants the motions to dismiss filed by the City Defendants and Defendant Berry.

**STANDARDS**

**A. Motion to Dismiss**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's

legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**B. Procedural Due Process**

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-01 (9th Cir. 2008). The Supreme Court has repeatedly recognized that "the Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *NASA v. Nelson*, 562 U.S. 134, 148 (2011) (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 598 (2008)). "This distinction is grounded on the 'common-sense realization' that if every 'employment decision became a constitutional matter,' the Government could not function." *Id.* at 148-49 (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)); *see also Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause . . . is not a guarantee against incorrect or ill-advised personnel decisions.").

To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally-protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Shanks*, 540 F.3d at 1090. Thus, "[a] threshold

requirement to a . . . procedural due process claim is the plaintiff's showing of a liberty[1] or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

An employee holds a protected property interest only if she or he has a reasonable expectation of entitlement to it. *Stiesberg v. State of California*, 80 F.3d 353, 356 (9th Cir. 1996); *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Public employees have a "property interest" in the terms and conditions of their employment if that interest is established "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents*, 408 U.S. at 577; *see also Ulrich v. City & Cty of S.F.*, 308 F.3d 968, 975 (9th Cir. 2002). A reasonable expectation of entitlement is derived from the wording of the independent source of law, and the "extent to which the entitlement is couched in mandatory terms." *Stiesberg*, 80 F.3d at 356 (quoting *Wedges/Ledges*, 24 F.3d at 62). When the independent source of law details procedural requirements, even those requirements do not automatically transform an employees' "unilateral expectations into a protected property interest." *Wedges/Ledges*, 24 F.3d at 62. Such an interest is only created if the "procedural requirements are intended to be a significant substantive restriction on . . . decision making." *T.T. v. Bellevue Sch. Dist.*, 376 F. App'x. 769, 771 (9th Cir. 2010) (quoting *Stiesberg*, 80 F.3d at 356).

## BACKGROUND

The background of this case has been discussed in the Court's previous opinions. The critical facts relevant to this motion are that after his personnel issues, including Defendant Berry

---

[1] Because Heidt remains employed, the Court in its previous opinion dismissed with prejudice Heidt's claim that Defendants' actions implicated a protected liberty interest.

issuing a "*Brady* letter"[2] informing Heidt that based on reports of his conduct the Yamhill County District Attorney had "'no choice but to disqualify you as a witness for the State due to a lack of confidence in you as a witness'" (hereinafter referred to as the "*Brady* Determination"), the MPD and Defendant Scales changed Heidt's work duties and shift assignments. Heidt alleges that the changes in his position have resulted in "second-class" officer status, which has been humiliating and caused damage to his reputation and future employment opportunities.

## DISCUSSION

**A. Due Process Claim**

Heidt raises a single claim for relief against all Defendants, alleging procedural due process violations. To survive Defendants' motions to dismiss, Heidt's TAC must allege facts showing that an independent source of law gives him an entitlement to the property interests he asserts and that the provisions of that independent source of law are couched in mandatory terms and are intended to be a significant substantive restriction on MPD's decision making. *See Stiesberg*, 80 F.3d at 356.

Heidt alleges that the City Defendants and Defendant Berry's involvement in the *Brady* Determination and resultant change in Heidt's job duties and opportunities deprived him of four constitutionally-protected property interests. Specifically, Heidt alleges he is entitled under his collective bargaining agreement ("union contract") and provisions of Oregon law to: (1) overtime hours and pay; (2) previous job duties; (3) promotions and future employability as a police officer; and (4) training opportunities. The Court addresses each of Heidt's alleged property interests in turn.

---

[2] *Brady* material is exculpatory or impeaching evidence, which prosecutors are required to disclose to defense counsel under *Brady v. Maryland*, 373 U.S. 83 (1963).

PAGE 5 – OPINION AND ORDER

1. **Overtime**

Generally, the right to a particular position or to receive overtime hours is not a constitutionally-protected property interest. *See, e.g.*, *Stiesberg*, 80 F.3d at 357 (holding that a failure to follow administrative procedure prior to transfer to a lateral position did not implicate a protected property interest); *Jackson v. Cty. of Los Angeles*, 46 F.3d 1142, 1995 WL 7665, at *2 (9th Cir. 1995) (dismissing due process claim as frivolous where the plaintiff "has not shown that the Constitution or any federal law gives him a right to work overtime or a right to carry a firearm at work"); *Barnes v. City of Phoenix*, 2009 WL 3425785, at *3 (D. Ariz. Oct. 22, 2009) (finding that absent allegations of an Arizona law creating a property interest in overtime and use of a state vehicle, "[s]uch losses do not amount to a deprivation of one's property interest under the Fourteenth Amendment"); *Eberz v. Oregon Dep't of State Police*, 2008 WL 697419, at *5 (D. Or. Mar. 14, 2008) (denying due process claim because of the "absence of any authority indicating that plaintiff has a property interest in unaccumulated overtime"). Nonetheless, Heidt argues that his union contract entitles him to fair and equal access to overtime. Alternatively, Heidt argues that Oregon law entitles him to overtime. Neither argument is persuasive.

   a. **Union Contract**

Heidt relies on Article 20, Section F of his union contract, which reads:

> **Section F. Voluntary Overtime Work:** The Police Department has various overtime shifts and approves and provides policing services to various organizations, agencies and private functions within the City. *Police Officers may volunteer to work these shifts or at those events.* These hours will be in addition to the normal working hours of the Officers and shall be compensated at the rate of time and one half for the time worked.

ECF 82-1 at 52 (emphasis added). Heidt argues that the provision that officers "may volunteer to work [overtime] shifts," in combination with MPD's practice of equally and fairly allocating overtime shifts, creates a property interest in overtime hours.

PAGE 6 – OPINION AND ORDER

There is no text in the cited provision that suggests that it is "intended to be a significant substantive restriction on [MPD's] decision making." *Bellevue Sch. Dist.*, 376 F. App'x. at 771. Although officers "may volunteer" for overtime shifts, MPD is not precluded from making rules about who may volunteer. MPD is not substantively restricted from, for instance, making overtime available only to seasoned police officers or officers who have had particular types of training. Even assuming that MPD must distribute overtime hours fairly and equally, this provision does not restrict MPD's ability to designate an overtime-eligible class of officers that does not include Heidt. Moreover, the provision specifically states that it is the MPD who "has" the overtime shifts and who "approves" the opportunities. Because there is no specific limit on how MPD may condition eligibility for voluntary overtime and there are no mandatory terms restricting MPD's discretion, this provision does not serve as a significant substantive restriction on MPD's decision making and thus does not create a protected property entitlement in overtime to MPD officers.[3] *Cf. Phillips v. Marion Cty. Sheriff's Office*, 494 F. App'x 797, 799 (9th Cir. 2012) (finding clause in the collective bargaining agreement requiring the defendant to submit to binding arbitration and accept the decision removed discretion from the employer and thus was a significant substantive restriction and created a property interest).

---

[3] By contrast, other provisions in Article 20 clearly provide such substantive restrictions. For instance Section C, provides that:

> **Section C. Days Off:** The present practice that an employee will not be required to work more than five (5) consecutive days, even during the period of a work schedule change, *shall be continued. An employee who works in excess of five (5) consecutive days shall be compensated at the overtime rate* until provided at least one (1) day off, except in the case of voluntary shift changes or promotion.

ECF 82-1 at 52 (emphasis added). Thus, relating to compensation after five consecutive days of work, MPD has no discretion and must compensate employees who have worked more than five days at overtime rates until that employee receives a day off.

PAGE 7 – OPINION AND ORDER

Moreover, the union contract's definition of overtime refutes Heidt's argument. Article 20, Section A of the union contract states:

> **Section A. Overtime:** Overtime means the time an employee is *authorized* to work, or works in the normal course of carrying out activities incumbent upon the employee, in excess of eight (8) hours in a work day . . .

ECF 82-1 at 52 (emphasis added). This section implies that voluntary overtime must be authorized by MPD, and thus, that MPD may develop rules to regulate overtime or condition overtime hours. Indeed, Article 19 provides that "[d]uty assignments are at the discretion of the Department and additional compensation as a result of a duty assignment does not constitute a property right for the employee to continue in a particular duty assignment." ECF 82-1 at 49. Thus Heidt's union contract expressly precludes his argument that his former duty assignments, which included overtime hours, constitute a property right.

### b. Oregon Law

Heidt argues that Oregon Revised Statutes §§ 236.350-236.370 give him a reasonable expectation of entitlement to overtime. Defendants argue that those statutes do not apply because they are superseded by the union contract. Defendants are correct. The statute provides that:

> ORS 236.350 to 236.370 do not apply to disciplinary action taken against public safety officers who are . . . [r]epresented in a collective bargaining unit if the collective bargaining agreement or the established policies of the law enforcement unit that employs the public safety officers provide for procedures and safeguards of the sort provided for in ORS 236.350 to 236.370.

Or. Rev. Stat. § 236.370(6). Thus, even if Heidt were correct that his changed job assignments constitute a demotion for the purposes of punishing him and would otherwise give Heidt rights under those statutes, the statutes do not apply to him because of the procedures and safeguards contained in his union contract.

### 2. Job Duties

Heidt also alleges that his union contract and MPD's police officer job description entitle him to a protected property interest in his job duties as they were before the *Brady* Determination. Defendants respond that the union contract and job description do not provide a property right or contain significant substantive restrictions on MPD's ability to assign job duties.

#### a. Union Contract

Heidt alleges that the MPD took improper disciplinary action against him by changing his assignment duties in violation of the union contract. His new job duties, he argues, are those of a non-commissioned Community Resource Officer, rather than a police officer. Heidt alleges that Article 1, Section C and Article 10, Section A entitle him to his former job duties and that he was deprived of those duties without the process set forth in the union contract.

Whether Heidt received the process set forth in the union contract is not the relevant question. The relevant question is whether the union contract creates a property interest in Heidt being able to work specific job duties. To do so, the contract must contain requirements couched in mandatory terms that contain significant substantive restrictions on MPD's discretion.

Heidt relies on the following provisions:

> **Section C. Changes in work:** If the City changes the duties of any existing employee or classification so as to make that employee or classification ineligible for inclusion in the bargaining unit, the City shall first submit to the Association notice of its intent.

ECF 82-1 at 19 (Article 1).

> **Section A. Discipline:** Disciplinary action or measures shall include only the following: written reprimand; suspension; demotion; discharge; or any combination thereof. . . .
>
> 3. The Employer agrees that such measures as assignment to duties outside those regularly given to other employees in the same

PAGE 9 – OPINION AND ORDER

> classification, or disapproval of leave requests, will not be used as disciplinary measures.

ECF 82-1 at 28 (Article 10 Discipline and Discharge). Defendants respond that these provisions neither provide Heidt a right nor constitute a significant substantive restriction on MPD's decision making, as demonstrated by other provisions in the union contract. The Court agrees.

Additionally, other clauses of the union contract show that it is within the MPD's discretion to assign officers' job duties. Article 2 of the union contract reserves to the City the exclusive management rights to "determine the size, nature and qualifications of the work force, to *assign duties* . . . [and] to direct and evaluate the employees in the performance of their work assignments." ECF 82-1 at 20 (emphasis added). Article 19 states that duty assignments are at the discretion of the MPD and explains that additional compensation from a particular duty assignment does not constitute a property right in that duty assignment. ECF 82-1 at 49.

The union contract does not have requirements couched in mandatory terms that remove MPD's discretion to assign officers certain job duties. Thus, "[e]ven assuming that [Heidt's reassignment] constituted punitive action, he cannot show that the [union contract] does anything more than create procedural guarantees or that it limited" MPD's authority to direct officer duties or reassign an officer to new duties. *Stiesberg*, 80 F.3d at 357 (internal citations and quotations omitted).

### b. Job Description

Heidt argues that the job description for police officer creates a legitimate expectation in those duties. It does not. This job description contains no promises and no guarantee of any particular job duty. *See* ECF 82-1 at 254-57. Further, as a practical matter, job descriptions are often over- or under-inclusive of the actual job duties. Although the job of police officer may include certain duties, an individual officer's day-to-day may include only a limited subset of

those duties, or include assignments that are not specifically listed. Additionally, some of the "essential job functions" contained in the job description are consistent with Heidt's current job duties.[4] Moreover, even assuming that Heidt is correct that he is entitled to the job duties listed, nothing in the job description substantively restricts MPD's ability to assign certain police officers only some of those duties.

### 3. Promotions and Future Employment

Heidt alleges that as a police officer he is entitled to promotions and to future employment as a police officer in other police departments. Heidt has not identified any section of his union contract that creates a reasonable expectation in a promotion, or that MPD is substantively restrained to maintain Heidt's eligibility for police work in a different police department. Moreover, Heidt has not alleged that he has sought employment in other police departments.

The Ninth Circuit has held that "[u]ntil someone actually receives a promotion, or at least a binding assurance of a forthcoming promotion, he cannot claim a property interest in the promotion." *Nunez v. City of Los Angeles*, 147 F.3d 867, 873 (9th Cir. 1998). None of Heidt's arguments demonstrate otherwise.

Heidt argues that the "City must make employment decisions with just cause, creating the expectation that the City must have just cause for its decision to promote or not promote a Police Officer" and that MPD's "regular practice of promoting officers based on their performance and experience, creates a legitimate claim of entitlement to promotional opportunities." Heidt further

---

[4] *See* ECF 82-1 at 254-55 (explaining that a police officer "Directs traffic at accident/crime scenes as necessary" and "Performs community policing activities such as meeting with individuals and groups to discuss crime prevention techniques. Collaborates with citizens, businesses and other community resources to jointly solve crime and livability problems. Participates in public relations programs, which may include speaking to citizen and school groups, and public service efforts.").

argues that because the arbitration cleared him of any wrongdoing, MPD had no just cause to place him in a position that restricted his promotional opportunities and employability as a police officer.

Heidt's argument addresses the second prong of the property interest analysis but fails to establish the first; he has not established a reasonable expectation of entitlement in future employment or promotions. Even if the union contract places substantive restrictions on discipline and MPD acted outside of its authority in disciplining him, Heidt has no reasonable expectation in a promotion, or relatedly, in any future employment with other police departments. Promotions within MPD are not guaranteed; Heidt's expectations are unilateral. Because he has not attempted to find work at another department, whether he will be able to find other employment if he seeks other employment, is wholly speculative and does not give rise to the level of a protected property interest.

### 4. Training

Heidt has not identified a provision in the union contract, or other independent law, that gives him a reasonable expectation of entitlement to training opportunities. Thus he has not adequately alleged a property interest in training.

### 5. Conclusion

Because Heidt fails adequately to allege a constitutionally-protected property interest in his specific job duties, opportunities for overtime, training, promotional opportunities, or employability at a different police department, Heidt's claim of a violation of his right to procedural due process violations fails. Heidt has had four opportunities to plead claims for relief and has been unable to do so. In its previous opinion, the Court explained what Heidt needed to allege in order to plead a constitutionally-protected property interest, and stated that if Heidt was

unable to do so in his Third Amended Complaint, the Court would dismiss this claim with prejudice. Accordingly, the Court will not grant leave for a further amendment.

**B. Additional Arguments**

Because the Court has found that Heidt has not sufficiently alleged a constitutional violation, the Court does not reach Defendants' remaining arguments, including: (1) exclusive jurisdiction of the Employment Relations Board; (2) failure to allege futility in the grievance process; (3) Heidt has received all process due; (4) MPD's *Brady* policy and implementation of its *Brady* policy is proper; (5) Heidt fails to allege improper unofficial City policies or customs relating to its *Brady* policies; (6) Defendant Berry was not involved in any alleged deprivation of a constitutionally-protected interest; and (7) qualified immunity of the individual defendants.

## CONCLUSION

The City Defendants' Motion to Dismiss (ECF 88) and Defendant Berry's Motion to Dismiss (ECF 89) are GRANTED. Heidt's Third Amended Complaint (ECF 82) is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED**.

DATED this 5th day of June, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge